UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ZAID ABDUL-AZIZ, individually and on behalf of
all others similarly situated,

                                             Docket No. 1:17-cv-08901-VSB

                   Plaintiff,

            v.                          **ORAL ARGUMENT REQUESTED**

NATIONAL BASKETBALL ASSOCIATION
PLAYERS' PENSION PLAN,

                   Defendant.
-----------------------------------------------------------------X

 

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATIONAL
BASKETBALL ASSOCIATION PLAYERS' PENSION PLAN'S
<u>MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

    A.    The Plan ........................................................................................................... 3

    B.    Relevant Plan Provisions in Effect in 1991, when Abdul-Aziz Elected His Form of Pension Benefits................................................................................................ 4

    C.    Relevant Plan Provisions in the 1996 Plan and Subsequent Plans ............................ 5

    D.    Abdul-Aziz's Benefits ........................................................................................ 6

    E.    Abdul-Aziz's Inquiry into His Benefit Entitlement.................................................. 7

    F.    Abdul-Aziz's Federal Court Complaint................................................................. 8

STANDARD OF REVIEW .......................................................................................................... 8

ARGUMENT ............................................................................................................................ 9

    I.    Abdul-Aziz's Claims are Time-Barred.................................................................. 9

    II.    Abdul-Aziz's Claims Fail on the Merits................................................................ 14

CONCLUSION......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Burke v. PriceWaterhouseCoopers LLP Long Term Disability Plan*,
  572 F.3d 76 (2d Cir. 2009)..................................................................................9

*Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*,
  201 F.3d 44 (2d Cir. 1999)......................................................................10, 12, 13

*DePasquale v. DePasquale*,
  No. 12-cv-2564, 2013 WL 789209 (E.D.N.Y. Mar. 1, 2013), *aff'd*, 568 F.
  App'x 55 (2d Cir. 2014)......................................................................................10

*Gunchick v. Bank of Am.*,
  No. 16-cv-4256, 2018 WL 888755 (N.D. Ill. Feb. 14, 2018), *appeal filed*, No.
  18-1420 (7th Cir. Feb. 23, 2018) .......................................................................13

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
  134 S. Ct. 604 (2013)............................................................................................9

*Hirt v. Equitable Ret. Plan*,
  450 F. Supp. 2d 331 (S.D.N.Y. 2006) (Hellerstein, J.), *aff'd*, 285 F. App'x 802
  (2d Cir. 2008).......................................................................................................9

*Hirt v. Equitable Ret. Plan for Emps, Managers & Agents*,
  285 F. App'x 802 (2d Cir. 2008) ......................................................................9, 10

*Holland v. Becker*,
  No. 08-cv-6171, 2013 WL 5786590 (W.D.N.Y. Oct. 28, 2013) ...........................13

*Kunsman v. Conkright*,
  977 F. Supp. 2d 250 (W.D.N.Y. 2013)................................................................12

*Maguire v. Level Sights, Inc.*,
  No. 03-cv-2294, 2004 WL 1621187 (S.D.N.Y. July 19, 2004)..............................8

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007).................................................................................8

*Miller v. Fortis Benefits Ins. Co.*,
  475 F.3d 516 (3d Cir. 2007)................................................................................11

*Moses v. Revlon Inc.*,
  691 F. App'x 16 (2d Cir. 2017) ..........................................................................10

*Novella v. Westchester County, N.Y. Carpenters' Pension Fund*,
    661 F.3d 128 (2d Cir. 2011)..................................................................................10, 11, 13

*Romero v. Allstate Corp.*,
    404 F.3d 212 (3d Cir. 2005)..................................................................................11

*Skelly v. Ins. Servs. Off.*,
    No. 12-cv-8889, 2014 U.S. Dist. LEXIS 183750 (S.D.N.Y. Sep. 12, 2014),
    *aff'd*, 599 F. App'x 409 (2d Cir. 2015)..................................................................10

*Thompson v. Ret. Plan for Emps. of S.C. Johnson & Son, Inc.*,
    651 F.3d 600 (7th Cir. 2011) ................................................................................11

*Union Pac. R.R. Co. v. Beckham*,
    138 F.3d 325 (8th Cir. 1998) ................................................................................11

*Veltri v. Bldg. Serv. 32B-J Pension Fund*,
    393 F.3d 318 (2d Cir. 2004)..................................................................................14

*Williams v. Rohm & Haas Pension Plan*,
    497 F.3d 710 (7th Cir. 2007) ................................................................................16

## STATUTES

IRC § 401(a)(16), 26 U.S.C. § 401(a)(16) ...................................................................4, 17

IRC § 411(c)(3), 26 U.S.C. §411(c)(3) ........................................................................14

IRC § 415, 26 U.S.C. § 415 .................................................................................. passim

IRC § 415(a)(1)(A), 26 U.S.C. § 415(a)(1)(A) ..............................................................4

IRC § 415(b)(1), 26 U.S.C. § 415(b)(1) ........................................................................4

IRC § 415(b)(2)(A), 26 U.S.C. § 415(b)(2)(A) ..............................................................4

IRC § 415(b)(2)(B), 26 U.S.C. § 415(b)(2)(B)..........................................................4, 15

IRC § 415(b)(2)(C), 26 U.S.C. § 415(b)(2)(C) ..............................................................4

IRC § 415(b)(5), 26 U.S.C. § 415(b)(5) ........................................................................4

IRC § 415(d), 26 U.S.C. § 415(d) ..........................................................................4, 15

ERISA § 204(c)(3), 29 U.S.C. § 1054 (c)(3) ................................................................8

ERISA § 204(g), 29 U.S.C. § 1054(g) ......................................................................8, 11

ERISA § 204(h) , 29 U.S.C. § 1054(h).................................................................9, 10, 11

ERISA § 502(a)(1) 29 U.S.C. § 1132(a)(1) ..............................................................9

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ...............................................8

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) .........................................................9

**REGULATIONS**

IRS Reg. § 1.415(a)-1(d)(1), 26 C.F.R. § 1.415(a)-1(d)(1) ................................4

IRS Reg. § 1.415(a)-1(d)(3), 26 C.F.R. § 1.415(a)-1(d)(3) ................................4

IRS Reg. § 1.415(a)-1(d)(3)(v)(B), 26 C.F.R. § 1.415(a)-1(d)(3)(v)(B) ...............15, 16

IRS Reg. § .415(d)-1(a)(7), 26 C.F.R. § 1.415(d)-1(a)(7) ..................................15

**RULES**

N.Y. C.P.L.R. § 213 .............................................................................................9

Fed. R. Civ. P. 12(b)(6).........................................................................................8

**OTHER AUTHORITIES**

IRS Rev. Rul. 79-90 (1979) .................................................................................15

## PRELIMINARY STATEMENT

Retired basketball player Zaid Abdul-Aziz ("Abdul-Aziz") brings this lawsuit seeking to recover additional benefits under the National Basketball Association Players' Pension Plan (the "Plan"). His theory is that the accelerated form of retirement benefit he elected to receive between 1991 and 2001 was not actuarially equivalent to the "Normal Retirement Benefit." His Complaint must be dismissed, both because it is untimely and because, as a matter of law, it fails to state a claim for relief.

After completing his playing years in 1978, Abdul-Aziz elected in 1991 to take his pension in the form of a "10 year certain only" benefit—meaning a benefit that is paid in monthly installments for ten years and then ceases. Even though he was specifically told, on numerous occasions, that he would not receive any additional benefits after ten years, Abdul-Aziz now complains—citing a Plan provision that by law cannot possibly mean what he contends—that the ten year payout he received should have somehow taken into account the value of multiple future "cost of living adjustments" ("COLAs") that increased the payment of monthly benefits in the future, but did not affect any benefit payments that had already been made. Specifically, the "COLAs" referenced in the Complaint were adjustments to the maximum benefit payments allowed by Section 415 of the Internal Revenue Code ("IRC"), which, beginning in 1996, the Plan authorized for future benefit payments, as these adjustments were put into effect by the Internal Revenue Service ("IRS").

The Court need not even consider the legal insufficiency of Abdul-Aziz's claims because, as a threshold matter, they are time-barred. Under prevailing Second Circuit case law, the statute of limitations period ran within six years of when Abdul-Aziz knew or should have known of his claims. In this case, that period commenced, at the latest, in 2001, when Abdul-Aziz finished receiving his "10 year certain only" benefit. By that time, he had already received several

benefit increases due to COLAs that, consistent with the Plan's terms, were provided on only a prospective basis to his remaining pension payments during the ten year payment period, without any recalculation of benefits already paid.  He also had been explicitly and repeatedly reminded that he would not be receiving any additional benefits after the ten year period ended, thus making it clear that he would not benefit further from any other COLA adjustments. Accordingly, if Abdul-Aziz believed that the benefit he received was not the benefit to which he was entitled under the Plan, the time for asserting such a claim expired over a decade ago.

Abdul-Aziz's claims fail on the merits as well.  To state a viable claim for additional benefits, Abdul-Aziz would have to establish that, at the time he made his benefit election, he had already accrued a right to COLAs that were not yet provided under the Plan, such that his accelerated benefit had to account for these adjustments.  But Abdul-Aziz could not possibly have accrued a right to such future adjustments because, at the time of his election, the Plan contained no promise of future COLAs.

Moreover, even if Abdul-Aziz had retired under subsequent versions of the Plan, which provided the cost of living adjustments to the Section 415 limitations on benefit payments, he still could not have accrued a larger benefit than the benefit he received.  While the IRS authorizes increases to the statutory cap on benefits in accordance with "Cost of Living Adjustments," regulations promulgated by the IRS make clear that anticipated increases to the statutory limit cannot be included in the calculation of optional benefit forms, such as the "10 year certain only" benefit that Abdul-Aziz elected.  The regulations also make clear that adjustments to the statutory limit intended to reflect cost of living adjustments are only permitted on a prospective basis.

In light of these regulations, the Plan could—as it did—increase future benefit payments when cost of living adjustments to the statutory limit went into effect, but it could not increase a participant's benefit payments in anticipation of such adjustments.  Moreover, as the regulations make clear, the Plan could not retroactively increase benefit payments that had already been paid at the statutory limit, and the Plan's provisions likewise made it explicit that there would be no recalculation of benefit payments previously made.  Thus, the "10 year certain only" benefit that Abdul-Aziz received was the actuarial equivalent of the normal retirement benefit to which he was entitled, and the fact that the Plan subsequently increased future monthly payments to correspond to cost of living adjustments to the Section 415 limits did not entitle Abdul-Aziz to anything more.

In sum, Abdul-Aziz's claims are both time-barred and without merit.  Accordingly, his claims must be dismissed.

## **BACKGROUND**

The following statement of facts is based on the allegations in the Complaint and the documents appended to or referenced therein.

### **A.  The Plan**

The Plan is a defined benefit plan that, during the period relevant to the Complaint, was administered by a Pension Committee with the discretion to interpret the Plan's terms.  (Compl., Ex. C-1 § 14.1.)  Participants could elect to take a "Normal Retirement Pension"—a monthly annuity starting at age 50 and continuing for life—or they could elect one of a number of optional forms of benefit, including a lump sum benefit or a "10 year certain only" benefit—a benefit payable in monthly installments over ten years.  (*Id.* §§ 3.1, 3.9.)  The Plan provided that each optional benefit form would provide a benefit of "equivalent value" to a participant's

normal retirement benefit using certain actuarial assumptions adopted by the Pension Committee or as set forth in the Plan.  (*Id.* §§ 1.2, 3.9.)

**B. Relevant Plan Provisions in Effect in 1991, when Abdul-Aziz Elected His Form of Pension Benefits**

The 1989 Plan, which was the Plan in effect when Abdul-Aziz elected the form of his benefit payments and when he later commenced receipt of his benefits (Compl. ¶ 91), provided that the normal retirement benefit for participants who had not yet begun to receive a benefit under the Plan as of September 1, 1988 would be equal to $200 per month for each year of service (*id.*, Ex. C-6 § 3.2(h)).  For players who elected to receive their benefit in an optional payment form, the Plan provided that this benefit would be actuarially equivalent to a player's normal retirement benefit.  The alternative form of benefit would be determined and become effective as of the effective date on which the player elected to start his benefit.  (Compl. ¶ 39, Ex. C-6 §§ 3.11, 3.12.)  As the Plan confirmed, these benefits were also subject to an absolute cap on benefits as required by IRC §§ 401(a)(16) and 415 for all tax qualified pension plans.[1]

---

[1] IRC § 415(b)(1) generally limits the maximum annual benefit that can be accrued or paid to a participant under a pension plan to the lesser of:  (i) a specified dollar amount and (ii) 100% of the participant's average compensation for the three consecutive calendar years during which the participant had the greatest aggregate compensation.  26 U.S.C. § 415(b)(1).  The "annual benefit" limited under IRC § 415 is a straight life annuity.  26 U.S.C. § 415(b)(2)(A).  If the benefit payable from a plan is in a form other than a straight life annuity, the benefit must be actuarially adjusted to an equivalent straight life annuity and then compared to the maximum benefit limit under IRC § 415.  26 U.S.C. § 415(b)(2)(B).  The benefit limit is subject to additional adjustment for participants who commence their benefit distributions early or who have less than ten years of credited service.  26 U.S.C. § 415(b)(2)(C) and (b)(5).

Plans must comply with IRC § 415 in operation and the plan document must preclude the possibility that any distribution will exceed the IRC § 415 limits.  26 U.S.C. § 415(a)(1)(A); 26 C.F.R. § 1.415(a)-1(d)(1).  The IRC provides for periodic cost of living adjustment by the IRS to the limit on the maximum annual benefit that can be accrued or paid, and plans are permitted, but not required, to incorporate by reference increases in the maximum benefit payable under the plan.  26 U.S.C. § 415(d) (providing for periodic cost of living adjustments); 26 C.F.R. § 1.415(a)-1(d)(3) (permitting plans to incorporate by reference the IRC § 415 limits).

(Compl., Ex. C-6 § 6.7(a).)  There were no provisions in the 1989 Plan for future benefit increases, such as increases associated with future adjustments to this statutory cap.

### C.  Relevant Plan Provisions in the 1996 Plan and Subsequent Plans

The 1996 Plan provided that participants who had not yet begun to receive a benefit as of September 1, 1996 were entitled to receive a normal retirement benefit equal to $285 per month for each year of service.  (Compl., Ex. C-7 § 3.2(j).)  The $285 monthly benefit also applied to participants already receiving a monthly benefit, but the Plan explicitly stated that the increase shall apply only with respect to benefit payments made on or after September 1, 1996 "and shall not require the recalculation of benefit payments made prior to such date."  (*Id.* § 3.2(k)(ii).)  As required by law, the Plan provided that under no circumstances could a benefit exceed the limit prescribed by IRC § 415.  (*Id.* § 6.7(a).)

The benefit increase provided for in the 1996 Plan implemented the negotiated terms of the 1995 collective bargaining agreement ("1995 CBA"), which increased the Plan's benefit formula to the "Maximum Monthly Benefit"—*i.e.*, the maximum monthly benefit permitted under IRC § 415.  (Compl., Ex. C-14, Art. IV § 1(a)(1)(i).)  The 1995 CBA also provided that the Maximum Monthly Benefit was to be increased in the future to correspond to cost of living adjustments to the Section 415 cap on benefits.  (*Id.*, Art. IV § 1(a)(1)(i)(C).)  But any such increases applied:  (i) to those players who had not yet begun to receive a benefit under the Plan as of September 1, 1996; and (ii) to players who were receiving monthly benefits under the Plan as of September 1, 1996, but (iii) "only with respect to benefit payments to be made on or after September 1, 1996 and shall not require the recalculation of benefit payments made prior to such date."  (*Id.* § 1(a)(1)(i)(D).)

Later versions of the Plan continued to implement, on a prospective basis, benefit increases that were negotiated in collective bargaining.  (Compl., Ex. C-15, Art. IV § 1(a)(1), Ex. C-16, Art. IV § 1(a), Ex. C-17, Art. IV § 1(b), Ex. C-18, Art. IV § 1(a)(2).)  Thus, any participants who had not yet completed receipt of their annual retirement benefits would receive the benefit of the collectively bargained increases on a going forward basis.

### D.  Abdul-Aziz's Benefits

Abdul-Aziz played in the National Basketball Association ("NBA") from 1968 to 1978 and was credited with eight years of service under the Plan.  (Compl. ¶¶ 86-88.)  In 1991, he completed a benefit election form and specifically elected the option of an "Installment[] for a Fixed Period."  (*Id.* ¶ 101, Ex. C-24 at 5.)  More specifically, he elected that the installments be for ten years.  (*Id.*)  The form contained an "Explanation of Optional Forms of Payment," which contained the following explanation of an "Installment for a Fixed Period":  "A benefit will be paid for a fixed number of payments, for the period you select (e.g., 5 years, 10 years)."  (*Id.*, Ex. C-24 at 5.)  "Upon the expiration of this period, all benefits will cease.  The total of all payments you will receive will equal the entire value of your retirement benefit."  (*Id.*)

Abdul-Aziz's original monthly benefit payment in 1991 was $1,851.64.  (Compl. ¶ 103.) Following the 1995 CBA and 1996 Plan amendment that increased participant benefits to the "Maximum Monthly Benefit," Abdul-Aziz was informed that "[e]ffective September 1, 1996, his monthly benefit was increased to $2,479.53 pursuant to the Collective Bargaining Agreement." (*Id.* ¶¶ 104-05, Ex. C-20.)  Abdul-Aziz's monthly benefit was subsequently increased annually, from 1997 through 2001, until he received his final monthly benefit payment of $2,892.88. (Compl. ¶¶ 106-09.)  In each case, the increase in benefits applied to future monthly benefit

payments, and, consistent with the Plan terms, did not result in any retroactive adjustment to benefit payments already made before the effective date of the amendment.

Abdul-Aziz was advised, not only in his 1991 benefit application form, but in several subsequent communications, that he would receive no additional pension benefits after the final payment was made in 2001.  (Compl., Exs. C-19 to 22, C-24 at 5.)  For example, a letter from the Plan dated July 12, 1991 advised Abdul-Aziz that his Application for Benefits had been received, that he would be receiving monthly payments of $1,851.64 beginning August, 1991, and that since he had elected to receive his benefits in the form of a "10 Year Certain Only," he would "cease receiving a benefit from this Plan on July 31, 2001."  (Compl., Ex. C-19.)  Subsequently, by letter dated October 30, 1997, the Plan advised Abdul-Aziz that, effective September 1, 1996, his monthly benefit was increased to $2,479.53, and that his benefits were "scheduled to cease July 31, 2001."  (Compl., Ex. C-20.)  And on two separate occasions in March 1998, the Plan informed Abdul-Aziz that, pursuant to a qualified domestic relations order entered as part of his divorce proceeding, any remaining Plan benefits would be divided equally between him and his ex-wife, Tayyibah Taylor, and that: "Payments under the Plan with respect to both Zaid Abdul-Aziz and Tayyibah Taylor will cease effective July 31, 2001 and neither Zaid Abdul-Aziz, Tayyibah Taylor nor their beneficiaries will be entitled to any further payments under the Plan after such date."  (Compl., Ex. C-21 at 2, Ex. C-22 at 2.)

### E.  Abdul-Aziz's Inquiry into His Benefit Entitlement

By letter dated April 26, 2015, fourteen years after Abdul-Aziz completed receipt of his benefit payments, an attorney representing him sent the Plan a letter asserting that Abdul-Aziz's retirement benefit had been "cashed out" at an amount less than the value of the benefit to which he was entitled under the terms of the Plan.  (Compl., Ex. C-23.)  By letter dated June 3, 2015, the Plan responded, explaining that Abdul-Aziz had elected a "10 year certain only" benefit,

which was of equivalent value to the normal retirement benefit to which he was entitled at the time of his election.  (Compl., Ex. C-24.)

### F.  Abdul-Aziz's Federal Court Complaint

Abdul-Aziz commenced this lawsuit on November 15, 2017.  (Dkt. 1.)  His Complaint raises two related claims, which are alleged on behalf of a putative class of all former participants who elected to receive a form of retirement benefit that terminated prior to the death of the participant or his spouse.

The first claim, expressed as a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), asserts that the Plan effectively underpaid Abdul-Aziz by failing to include, in his benefit calculation, COLAs that the Plan awarded to participants who received a Life Annuity.  (Compl. ¶¶ 132-34.)  The second claim, which appears to be an alternative claim for the same relief, is based on ERISA § 204(c)(3) and (g), 29 U.S.C. § 1054 (c)(3) and (g), which require that participants electing an alternative form of benefit receive the actuarial equivalent of the accrued normal retirement benefit.  The Complaint alleges that the Plan failed to provide Abdul-Aziz the actuarial equivalent of his normal retirement benefit, and that this constituted an illegal "cutback" of his accrued benefits.  (*Id.* ¶¶ 135-36.)

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss should be granted if the allegations in the complaint, even if true, fail to set forth a viable legal claim.  *Maguire v. Level Sights, Inc.*, No. 03-cv-2294, 2004 WL 1621187, at *2 (S.D.N.Y. July 19, 2004).  In deciding a motion under Rule 12(b)(6), a district court may consider the complaint, documents incorporated by reference in the complaint, and undisputedly authentic documents on which the plaintiff's claims are based.  *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## ARGUMENT

### I.     Abdul-Aziz's Claims are Time-Barred

Abdul-Aziz's claims are time-barred because he was clearly placed on notice of his

claims—at the latest—by 2001, when he received the last of his benefits, after having repeatedly

received benefit increases that applied only to his future benefit payments, and after having been

repeatedly told that he would receive nothing more after his ten years of benefit payments were

completed.  His claims cannot be revived merely because his attorney made an inquiry into the

calculation of his benefit fourteen years later.  Nor can they be revived by limiting his request for

relief to recent benefit increases or to prospective relief, when the basis for seeking such relief is

attributable to the same claims that already expired.

Because ERISA does not provide a statute of limitations for claims brought under ERISA

§ 502(a)(1) and (a)(3), courts apply the forum state's limitations period for the most analogous

state law claim.  *Burke v. PriceWaterhouseCoopers LLP Long Term Disability Plan*, 572 F.3d

76, 78 (2d Cir. 2009).  Here, New York's six year limitations period for breach of contract

claims governs Abdul-Aziz's claims for benefits and statutory violations under ERISA.  *Hirt v.

Equitable Ret. Plan*, 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006) (Hellerstein, J.), *aff'd*, 285 F.

App'x 802 (2d Cir. 2008) (applying N.Y. C.P.L.R. § 213 to claim that cash balance plan violated

ERISA § 204(h)).[2]  As set forth below, Abdul-Aziz's claims accrued, at the latest, by 2001.

Accordingly, in order to be timely, he would have had to commence his lawsuit, at the latest, by

---

[2] The Plan reserves the right to contend that the limitations period for benefit claims is even
shorter, since the Plan was amended, effective July 1, 2017, to include a three year limitations
period.  *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 612-13 (2013) (holding
that a three year contractual limitations period in an ERISA long-term disability plan was
enforceable because it was "reasonable").  Because, in Abdul-Aziz's case, the claim is clearly
barred even under the longer six-year limitations period, there is no reason to address this issue
now.

2007; by 2017, when he actually commenced this action, the statute of limitations had long expired.

The Second Circuit has held that a claim for benefits "accrues upon a clear repudiation by the plan that is known, or should be known" by the participant, "regardless of whether [he] has filed a formal application for benefits." *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 48-49 (2d Cir. 1999). In *Novella v. Westchester County, N.Y. Carpenters' Pension Fund*, 661 F.3d 128 (2d Cir. 2011), the Second Circuit held that, where a plaintiff's claim is predicated on an alleged miscalculation of benefits, the repudiation occurs "when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation." *Id.* at 147; *see also Moses v. Revlon Inc.*, 691 F. App'x 16 (2d Cir. 2017) (holding that a beneficiary who knew as of 1989 that her husband had elected a higher monthly pension benefit commencing when he would have turned 65 was on notice of her claim for underpayment of her pension benefits in 2004 when she received a lower monthly benefit); *DePasquale v. DePasquale*, No. 12-cv-2564, 2013 WL 789209, at *13 (E.D.N.Y. Mar. 1, 2013), *aff'd*, 568 F. App'x 55 (2d Cir. 2014) (concluding that plaintiff's claim that his pension benefit was miscalculated was time-barred despite repeated inquiries that went unanswered because with due diligence he should have discovered the injury that was the basis of his claim more than six years prior to filing suit). These same principles apply to claims predicated on alleged statutory ERISA violations. *See, e.g.*, *Hirt v. Equitable Ret. Plan for Emps, Managers & Agents*, 285 F. App'x 802, 804 (2d Cir. 2008) (holding that claim for violation of ERISA § 204(h) accrued when participant received summary plan description giving him notice of alleged statutory violation); *Skelly v. Ins. Servs. Off.*, No. 12-cv-8889, 2014 U.S. Dist. LEXIS 183750, at *7 (S.D.N.Y. Sep. 12, 2014) (holding time-barred participant's claim that plan amendment changing calculation of

retirement plan benefits violated ERISA § 204(g) because participant's claim began to accrue

when he received notice of the amendment, how it worked, and the effect it would have on his

benefits more than six years prior to filing of the complaint), *aff'd*, 599 F. App'x 409 (2d Cir.

2015) (summary order).

Courts outside the Second Circuit have similarly concluded that claims for benefits, as

well as statutory claims for additional benefits, accrue when the participant can be reasonably

expected to be aware of the claim. *See, e.g.*, *Thompson v. Ret. Plan for Emps. of S.C. Johnson &*

*Son, Inc.*, 651 F.3d 600 (7th Cir. 2011) (holding that payment of lump sums triggered accrual of

the applicable statute of limitations on statutory claims where plan had previously informed

participants that no additional payments would be made); *Miller v. Fortis Benefits Ins. Co.*, 475

F.3d 516 (3d Cir. 2007) (holding that claim for long-term disability benefits accrued when

plaintiff received his first incorrect payment over fifteen years earlier because the receipt of

diminished long-term disability payments gave immediate and obvious notice of an adverse

benefit determination); *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 331-32 (8th Cir. 1998)

(holding that claim accrued when participants provided fact sheets stating that acquiring

company would not count pre-acquisition service under its pension plan); *see also Romero v.*

*Allstate Corp.*, 404 F.3d 212 (3d Cir. 2005) (concluding that federal discovery rule, *i.e.*, the clear

repudiation rule, governs when the statute of limitations accrues for claims under ERISA

§ 204(g) and (h)).

Under *Novella*'s "knew or should have known" standard, Abdul-Aziz's claims accrued,

at the latest, by 2001.  By this time, Abdul-Aziz had finished receiving his benefits, including

benefit increases that, consistent with the terms of the Plan, applied on only a prospective basis

and did not result in any recalculation of benefit payments previously made.  (*See* Compl.

¶¶ 104-10, Ex. C-20.)  He certainly knew, or should have known, even before 2001, that increases to his pension benefit applied only to future benefits not yet paid, as benefits previously paid to him before the effective date of the benefit increase were not increased retroactively. Furthermore, when he first elected his "10 year certain only" benefit, and on multiple occasions thereafter, Abdul-Aziz was repeatedly told that he would receive no additional benefits after the ten-year period ended in 2001.

In an effort to avoid the obvious conclusion that, on these undisputed facts,  Abdul-Aziz's claims are time-barred, the Complaint asserts that the statute of limitations has not run for three alternative reasons:  (i) Abdul-Aziz's claims were not repudiated until the Plan responded to his counsel's inquiries in 2015; (ii) his claims "re-accrued" each time there was an increase in benefits; and (iii) even if his claims for past due benefits are time-barred, his claim for a declaratory judgment entitling him to future benefits is not.  (Compl. ¶¶ 150, 154-55.)  None of these arguments have merit.

The first argument fails because the subsequent inquiry by Abdul-Aziz's attorney does not alter the fact that his claims accrued, at the latest, in 2001, and became time-barred when he failed to file suit within the following six years.  Once these claims expired, they could not be revived by a subsequent inquiry over a decade later.  *See Carey*, 201 F.3d at 48-49 (holding that once participant informally pursued benefit claim to a final resolution, but failed to file suit within the limitations period, he could not "revive his stale claim merely by filing a formal application"); *Kunsman v. Conkright*, 977 F. Supp. 2d 250, 258 (W.D.N.Y. 2013) (holding that 1998 plan disclosure triggered claim accrual, for statute of limitations purposes, and that a finding that "plaintiffs' cause of action did not accrue until their administrative claims were formally denied would allow plaintiffs to avoid the statute of limitations by the simple act of

12

filing a claim, and would ignore the Second Circuit's directive" in *Carey, supra,* that an expired

claim cannot be revived by a subsequent application); *Holland v. Becker*, No. 08-cv-6171, 2013

WL 5786590, at *4 (W.D.N.Y. Oct. 28, 2013) (holding that "plaintiffs [could not] unilaterally

extend their limitations period by filing administrative claims years after they were put on

notice" of how their benefits were calculated); *see also Gunchick v. Bank of Am.*, No. 16-cv-

4256, 2018 WL 888755 (N.D. Ill. Feb. 14, 2018) (holding that participant's claim that his

pension benefits were miscalculated began to accrue when he received notice of the formula and

values used to calculate his benefit), *appeal filed*, No. 18-1420 (7th Cir. Feb. 23, 2018).

       The second argument fails for similar reasons.  Having repeatedly been told between

1991 and 2001 that his benefits would cease in 2001, and thus that he would not receive *any*

additional benefits, and having repeatedly been made aware that benefit increases would apply

only to future benefit payments, Abdul-Aziz cannot be heard to have a timely claim merely

because there recently have been, or will be, additional benefit increases that he believes should

somehow have been accounted for in the benefits that were paid to him almost two decades ago.

Indeed, the Second Circuit has explicitly rejected such a "continuing violation" theory, holding

that it cannot be applied in cases where the "plaintiff's claims are based on a single decision that

results in lasting negative effects."  *Novella*, 661 F.3d at 146 (citation omitted).

       Nor can Abdul-Aziz salvage his claims by arguing that he seeks a declaratory judgment

as to his right to future benefits.  In *Carey*, the Second Circuit held that the same limitations

period that applies to a claim for present benefits applies to a declaratory judgment action

regarding future benefits.  As the Court observed, a contrary rule would "render the limitation

period meaningless."  201 F.3d at 49.

In short, under the Second Circuit's "knew or should have known" standard, Abdul-Aziz's claims accrued, at the latest, by 2001, when he ceased receiving benefits after being repeatedly advised that benefit increases would apply only to future benefit payments and that he would receive no additional benefits after the completion of his chosen ten year period of benefit payments had ended.  All of his claims for relief are thus time-barred.   To conclude otherwise, and thereby allow participants who exited the Plan over a decade ago to resurrect claims for additional benefits, would unjustifiably expose the Plan to significant unfunded liabilities that the Plan had no reason to anticipate and, therefore, no reasonable opportunity to mitigate.  *Cf. Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 325-26 (2d Cir. 2004) (observing that failure to enforce statute of limitations would "threaten the ability of pension plans to prepare in advance to meet [their] financial obligations").

## II.    Abdul-Aziz's Claims Fail on the Merits

Both of Abdul-Aziz's claims are premised on his contention that he did not receive the actuarial equivalent of his normal retirement benefit because the calculation of his "10 year certain only" benefit did not take into account future cost of living adjustments to the IRC § 415 limits.  But a review of the applicable Plan provisions confirms that Abdul-Aziz did in fact receive the actuarial equivalent of his accrued normal retirement benefit.  Moreover, as a matter of law, Abdul-Aziz could not have accrued a benefit based on anticipated future cost of living adjustments to the IRC § 415 limits on benefit payments because doing so would have caused the Plan to pay him a benefit that exceeded the IRC § 415 limits.

IRC § 411(c)(3), the statutory provision cited in the Complaint, requires pension plans to provide that any optional form of benefit is at least the actuarial equivalent of the accrued normal retirement benefit under the plan.  26 U.S.C. § 411(c)(3).  Consistent with the statute and

accompanying regulations, the Plan provides that the calculation of the actuarially equivalent benefit is performed based on the normal retirement benefit that is accrued at the time of the benefit determination.  (Compl. ¶ 39, Ex. C-6 §§ 3.11, 3.12); *see also* IRS Rev. Rul. 79-90 (1979) (stating that if a plan does not include fixed actuarial assumptions for calculating the actuarial equivalent of a normal retirement benefit, it must specify the procedure by which the applicable assumptions will be determined at the time of the benefit determination).

IRC § 415(b)(2)(B) likewise requires that when a participant's benefit is paid in the form of an optional benefit, the benefit must be adjusted to an actuarially equivalent annual benefit to determine whether the benefit exceeds the limit then in effect under IRC § 415.  26 U.S.C. § 415(b)(2)(B).  Consistent with this rule, the applicable IRS regulations make clear that cost of living adjustments to the Section 415 cap must be implemented only on a prospective basis, as they occur, and thus that a participant does not accrue a right to have these increases factored into the calculation of an actuarially equivalent alternative form of benefit like a lump sum. Specifically, IRS Regulation 1.415(a)-1(d)(3)(v)(B), entitled "(B) Cost-of-living adjustments not included in accrued benefit until effective," states that, "[n]otwithstanding that a plan incorporates the increases to the applicable limits under [IRC] section 415(d) by reference, the accrued benefit of a participant for purposes of [IRC] section 411 and any amount payable to a participant for purposes of [IRS Regulation] 1.415(b)-1(a)(1) are not permitted to reflect increases pursuant to the annual increase under [IRC] section 415(d) of the dollar limitation described in section 415(b)(1)(A) or the compensation limit described in section 415(b)(1)(B) *for any period before the annual increase becomes effective*." 26 C.F.R. § 1.415(a)-1(d)(3)(v)(B) (emphasis added).  In addition, IRS Regulation 1.415(d)-1(a)(7), Ex. 3 contains a specific example that demonstrates that, even if a plan incorporates by reference the annual adjustments

15

to the limit under IRC § 415, no adjustment to that limit could be used to increase the benefit of a participant who received his entire accrued benefit prior to the adjustment to any additional distribution.[3]

      Consistent with these regulations, the NBA and the National Basketball Players Association agreed in collective bargaining in 1995 to allow for increases in the so-called "Maximum Monthly Benefit"—meaning the maximum benefit permitted under IRC § 415—to take into account subsequent cost of living adjustments to the Section 415 limits, but expressly allowed for such increases only to monthly pension payments that had not yet been made.  The 1996 Plan that implemented this agreement, as well as subsequent plans, likewise contained express language stating that the increases "shall not require the recalculation of benefit payments made prior to such date."  (Compl., Ex. C-7 § 3.2(k).)  As a practical matter, the Plan could not have provided otherwise, since any retroactive adjustments to benefits that were already at the statutory limit at the time of payment would have violated the regulations by effectively enabling a participant to receive a benefit that exceeded the statutory limit.

      At the time Abdul-Aziz made his benefit election in 1991, the Plan did not yet provide for benefit increases associated with these COLAs.[4]  As such, his accrued normal retirement

---

[3] The Complaint appears to confuse the Plan's cost of living adjustments to the Section 415 limitations with fixed cost of living adjustments to the actual benefit formula, which are typically tied to the consumer price index or some other factor provided as part of the plan benefit formula.  There is a line of authorities dealing with the issue of whether there is an impermissible cutback of an accrued benefit where a participant elects an optional benefit form that does not take into account these fixed cost of living adjustments to the plan formula.  *See, e.g.*, *Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710 (7th Cir. 2007).  These authorities have no application here.  For the reasons stated above, Section 415 cost of living adjustments are not included in the accrued benefit of a participant until they become effective, and can be provided on only a prospective basis.  *See* IRS Regulation 1.415(a)-1(d)(3)(v)(B) (discussed *supra* pp. 15-16).

benefit, from which his actuarially equivalent "10 year certain only" benefit was calculated, could not possibly have included any such adjustments.  (*See supra* p. 16.)

Nevertheless, because the Plan subsequently was amended to provide for the adjustments, Abdul-Aziz did in fact benefit from them.  In accordance with the express Plan provisions, and to the extent permitted by law, his benefit was increased to the Maximum Monthly Benefit effective 1996, and thereafter, multiple additional times in the course of the ten year period in which he received his benefits, to correspond to COLAs.  (*See* Compl. ¶¶ 103-09.)  But he was not entitled under the terms of the Plan, or applicable law, to have his "10 year certain" benefit increased further, based on anticipated future COLAs.[5]

In short, the "10 year certain only" form of benefit that Abdul-Aziz elected in 1991 was properly calculated as the actuarial equivalent of the normal retirement benefit that the Plan provided at the time.  At that time, the Plan did not provide for the COLAs claimed in this lawsuit.  The subsequently added provisions allowing for benefit increases due to Section 415 cost of living adjustments could apply only on a prospective basis under both the express terms of the Plan and applicable law.  Accordingly, Abdul-Aziz was not deprived of an actuarially equivalent benefit; nor was there any illegal cutback of his accrued benefit.

---

[4] As discussed *supra*, the collective bargaining parties only first agreed to make benefit increases corresponding to COLAs in 1995.

[5] As noted above, starting in 1996, Abdul-Aziz's benefit was increased to the maximum amount permitted by IRC § 415, and was thereafter increased to correspond to Section 415 cost of living adjustments.  Any additional adjustment that caused his benefit to exceed the Section 415 limits could have caused the Plan to lose its tax qualification status.  *See* 26 U.S.C. § 401(a)(16) ("A trust shall not constitute a qualified trust under this section if the plan of which such trust is a part provides for benefits or contributions which exceed the limitations of [I.R.C. §] 415.").

## CONCLUSION

For the reasons set forth herein, the Complaint must be dismissed with prejudice.


Dated:   March 2, 2018                                    **PROSKAUER ROSE LLP**

                                                          By:       */s/ Myron D. Rumeld*
                                                          _____
                                                                   Myron D. Rumeld
                                                          Eleven Times Square
                                                          New York, NY 10036
                                                          (212) 969-3021
                                                          mrumeld@proskauer.com

                                                          Neil V. Shah
                                                          One Newark Center
                                                          Newark, NJ 07102
                                                          Tel: (973) 274-3205
                                                          nshah@proskauer.com

                                                          **BLITMAN & KING LLP**
                                                          Jules L. Smith
                                                          The Powers Building, Suite 500
                                                          16 West Main Street
                                                          Rochester, NY 14614
                                                          Tel: (585) 341-3130
                                                          jlsmith@bklawyers.com

                                                          *Counsel for the Defendant*